Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| ODETTE S. RIVERA RIVERA<br><br>Apelante<br>v.<br><br>HOSPITAL EPISCOPAL SAN LUCAS, INC. H/N/C HOSPITAL EPISCOPAL SAN LUCAS METRO<br><br>Apelados | KLAN202301101 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV01986<br><br>Sobre: Procedimiento Sumario bajo Ley Núm. 2, Ley de Represalias en el Empleo, Despido Injustificado, Ley de Transformación y Flexibilidad Laboral, Discrimen |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 2 de abril de 2024.

Comparece ante nos, la *Sra. Odette S. Rivera Rivera* (en adelante, "Rivera Rivera o apelante–querellante"), para que revoquemos la *Sentencia* emitida el 22 de noviembre de 2023,[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"). Allí, se declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por el *Hospital Episcopal San Lucas, Inc.* h/n/c *Hospital Episcopal San Lucas Metro* (en adelante, "HESL o apelado–querellado"), y desestimó la reclamación en su totalidad.

Evaluada la totalidad del expediente, **confirmamos** la *Sentencia* apelada. **Veamos.**

---

[1] Notificada el 27 de noviembre de 2023.

Número Identificador
SEN2024_____

**-I-**

El **3 de marzo de 2023**, la señora Rivera Rivera presentó una querella por discrimen injustificado,[2] discrimen por religión,[3] y represalias,[4] mediante el *Procedimiento Sumario* de la Ley Núm. 2-1961 contra HESL.[5]

Por su parte, el **22 de marzo de 2023**, HESL presentó *Contestación a Querella*, en la cual, básicamente negó las alegaciones planteadas.[6]

Como parte del descubrimiento de prueba, el **9 de mayo de 2023**, el HESL llevo a cabo la deposición de la señora Rivera Rivera. Asimismo, el **14 de junio de 2023**, la apelante llevó a cabo la deposición de la representante de HESL, la *Sra. Zorivy Fonseca Virella* (en adelante, "Fonseca Virella"), quien fungía como Gerente de Recursos Humanos.

Concluido el descubrimiento de prueba, el **10 de octubre de 2023**, el HESL sometió una *Moción de Solicitud de Sentencia Sumaria*.[7] Esbozó sesenta (60) hechos incontrovertidos, y argumentó que la reclamación de la apelante carecía de una controversia real sobre hechos materiales, por lo que procedía la desestimación de la querella. Apoyó su solicitud en los siguientes documentos presentados como anejos: **(1)** parte de la transcripción de la deposición realizada a la señora Rivera Rivera;[8] **(2)** una declaración jurada de la señora Fonseca Virella;[9] **(3)** documento titulado *CONTRATO POR TIEMPO PROBATORIO* firmado por la

---

[2] Ley Núm. 80 del 30 de mayo de 1976, según enmendada, conocida como la *Ley Sobre Despidos Injustificados*, 29 LPRA sec. 185a *et seq.*

[3] Ley Núm. 100 del 30 de junio de 1959, según enmendada, conocida como la *Ley Antidiscrimen de Puerto Rico*, 29 LPRA sec. 146 *et seq.*

[4] Ley Núm. 115 del 20 de diciembre de 1991, según enmendada, conocida como la *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial*, 29 LPRA sec. 194 *et seq.*

[5] Surge de los *autos*, que HESL era el antiguo patrono de la apelante.; Véase, Anejo 1 de la *Apelación*, págs. 27–35.

[6] Anejo 2 de la *Apelación*, págs. 36 – 70.

[7] Anejo 3 de la *Apelación*, págs. 71 – 203.

[8] *Id.*, a las págs. 108 – 145.

[9] *Id.*, a las págs. 146 – 148.

apelante;[10] **(4)** parte de la transcripción de la deposición realizada a la señora Fonseca Virella;[11] **(5)** documento titulado *Acuse de Recibo del Manual*;[12] **(6)** partes del Manual de Empleados;[13] **(7)** copia de la carta realizada por la señora Berrios Nieves;[14] **(8)** copia de un correo electrónico de la fecha: 17 de febrero de 2023;[15] y **(9)** documento titulado *RE: Terminación de Empleo* con fecha del 17 de febrero de 2023.[16]

En esencia, HESL —detalló los hechos sobre los cuales no había controversia— y conforme a los documentos obrantes en el expediente, justificó el despido de la apelante por haber incurrido en conductas contrarias a las políticas y normas de la empresa, específicamente conducta de acoso laboral. Sostuvo que el despido de la apelante no fue una acción prohibida, arbitraria, caprichosa, discriminatoria o en represalias. Todo lo contrario, fue una acción afirmativa ante los hallazgos de una investigación realizada por una queja de acoso laboral de una subordinada contra la apelante.

Asimismo, argumentó que la apelante no podía probar un caso de discrimen ni de represalias. Señaló que, ésta basaba sus reclamaciones en meras alegaciones sin prueba en contrario.

En oposición, el **1 de noviembre de 2023**, la señora Rivera Rivera presentó *Réplica a solicitud de sentencia sumaria.*[17] Además de alegar que había controversia sobre treinta y seis (36) hechos esenciales,[18] argumentó que su despido fue uno sin justa causa. Específicamente, adujo que su despido fue debido a sus creencias religiosas, y en represalias, luego que la apelante presentara una querella señalando el incumplimiento de HESL con algunos

---

[10] *Id.*, a las págs. 149 – 150.
[11] *Id.*, a las págs. 151 – 186.
[12] *Id.*, a la pág. 187.
[13] *Id.*, a las págs. 188 – 196.
[14] *Id.*, a las págs. 197 – 200.
[15] *Id.*, a las págs. 201 – 202.
[16] *Id.*, a la pág. 203.
[17] Anejo 5 de la *Apelación*, págs. 205 – 274.
[18] A esos efectos, aceptó que había controversia sobre los hechos #4, #7, #14, #17, #21 al #45, #47 al #51, #55 al #56.

procedimientos establecidos. A esos efectos, sostuvo que al haber presentado una queja interna ante el apelado (el 3 de febrero de 2023), y la proximidad de su despido (el 17 de febrero de 2023), ello constituye una causa de acción por represalias al amparo de la Ley Núm. 115 - 1991.

A su vez, señaló que se vio cuestionada, en varias ocasiones, sobre cuál era su religión. La apelante adujo que al cuestionarle a la señora Fonseca Virella sobre el movimiento de la oficina de base de fe, y luego darle credibilidad a la queja presentada por la *Sra. Aimeé Berríos*,[19] era un claro discrimen por razón de religión.

Para refutar la solicitud de sentencia sumaria y sustentar sus argumentos, la apelante incluyó en su escrito en oposición los siguientes documentos como anejos: **(1)** parte de la transcripción de la deposición realizada a la señora Rivera Rivera;[20] y **(2)** parte de la transcripción de la deposición realizada a la señora Fonseca Virella.[21]

Varios trámites procesales después, HESL replicó el **14 de noviembre de 2023**.[22] En esencia, adujo que la señora Rivera Rivera no cumplió con la Regla 36.3 de Procedimiento Civil, dado que no controvirtió los hechos en controversia. Por lo que, señaló que la contraparte no logró refutar conforme a derecho los hechos presentados por HESL. Además, reiteró que cumplió con sus obligaciones de investigar una queja de acoso laboral, y tomar acciones afirmativas en cumplimiento con las normas y la ley. De igual forma, reafirmó que la apelante no estableció un nexo causal entre su despido y la alegada actividad protegida. Por lo que, solicitó que se desestimará toda reclamación.

---

[19] Según la apelante, ésta le comentó a la Sra. Aimeé Berríos que, Dios le había revelado que la señora Berríos era víctima de violencia doméstica.
[20] Anejo 5 de la *Apelación*, a las págs. 238 – 264.
[21] *Id.*, a las págs. 265 – 274.
[22] Anejo 10 de la *Apelación*, a las págs. 286 – 310.

Examinada las mociones, el TPI emitió *Sentencia* el **22 de noviembre de 2023** notificada el 27 del mismo mes y año.[23] En esta, esbozó los siguientes hechos probados:

1. La querellante comenzó a trabajar para el Hospital el 28 de septiembre de 2022 en virtud de un Contrato por Tiempo Probatorio.

2. La querellante ocupó la posición de Supervisora de Trabajo Social durante su periodo de empleo en el Hospital.

3. Como Supervisora de Trabajo Social, la querellante supervisaba a la Sra. Aimeé Berríos ("Sra. Berríos"), quien ocupaba el puesto de Trabajadora Social.

4. Como Supervisora de Trabajo Social, la querellante era responsable de, entre otras funciones y responsabilidades, promover las buenas relaciones interpersonales en el departamento, mantener un ambiente agradable en el Departamento y honrar y respetar la privacidad y dignidad de los individuos.

5. La supervisora de la querellante era la Lcda. Yelitza Lucena ("Lcda. Lucena"), directora ejecutiva del Hospital.

6. La Sra. Zorivy Fonseca es la Gerente de Recursos Humanos del Hospital desde el 17 de octubre de 2022.

7. Como Gerente de Recursos Humanos, las funciones principales de la Sra. Fonseca en la administración del Departamento de Recursos Humanos del Hospital eran:

    a. Manejar el ciclo de contratación y atender las diversas situaciones que ocurran en el área de trabajo.

    b. Orientar a los supervisores sobre las políticas y normativas de la institución de manera que realizaran sus funciones de manera correcta en sus respectivas áreas de trabajo.

    c. Realizar investigaciones internas sobre querellas presentadas por empleados.

    d. Hacer cumplir el Manual del Empleado y todas las políticas institucionales y normativas del Hospital.

    e. Tomar decisiones disciplinarias, incluyendo el despido de empleados.

8. La querellante se comprometió a cumplir con todas las normas institucionales del Hospital, incluyendo el Manual de Empleados.

9. El 28 de septiembre de 2022, la querellante recibió copia del Manual del Empleado del Hospital.

10. La querellante leyó y conocía el Manual del Empleado.

11. La querellante conocía que el Hospital contaba con una Política de Acoso Laboral.

12. La querellante recibió un taller sobre la Política y Protocolo de Acoso Laboral de la Institución.

13. Conforme a la Política y Protocolo de Acoso Laboral contenida en el Manual del Empleado del Hospital, el Hospital prohíbe todo tipo de acoso laboral que afecte el desempeño de sus empleados(as), que altere la paz industrial y/o atente contra la dignidad de sus empleados(as).

14. El Hospital repudia y no tolera el acoso laboral en el empleo y tiene el firme propósito de atender e investigar

---

[23] Anejo 12 de la *Apelación*, a las págs. 312 – 331.

incidentes o quejas sobre conducta que pudiere constituir acoso en el área de trabajo con el fin de erradicar la misma.

15.     De conformidad con la Política de Acoso Laboral, cualquier empleado(a) que incurra en acoso laboral podrá estar sujeto(a) a severas sanciones disciplinarias que podrán incluir el despido, **aún como primera sanción**.

16.     Con el propósito de determinar qué conducta constituye acoso laboral, el Hospital hará una evaluación de la totalidad de las circunstancias.

17.     De conformidad con la Política de Acoso Laboral, la sección 1.7.10 del Manual dispone que bajo los parámetros estatutarios que le imponen al Hospital, la obligación de prevenir, prohibir y erradicar el acoso laboral en el empleo no será necesario que exista una querella ni que se logre probar contra un(a) empleado(a) un caso de acoso laboral bajo la Ley Núm. 90-2020 en algún foro, para poder ejecutar la sanción correspondiente por incumplir con las normas del Hospital.

18.     La querellante conocía que las repercusiones de incurrir en conducta de acoso laboral eran el despido, aun si fuera la primera vez que incurre en esa conducta.

19.     El 3 de febrero de 2023, la Sra. Fonseca y la Sra. Lucena citaron a la querellante a una reunión.

20.     El motivo de la reunión del 3 de febrero de 2023 fue dialogar con la querellante sobre una llamada que ésta hizo al Hospital San Lucas Ponce, solicitando una reunión con el personal de Recursos Humanos de esa institución para dialogar sobre asuntos del Hospital San Lucas Metro.

21.     En la reunión del 3 de febrero de 2023, la querellante manifestó preocupación sobre asuntos de manejo inadecuado de cosas de confidencialidad; comportamientos de otros empleados como de burlas, empleados llamándose por su nombre diminutivo; comportamiento inapropiado de otros empleados y una situación del equipo multidisciplinario, sobre un plan de cuidado que no debió ser ubicado por una persona que no fuera, eh, la trabajadora social, en términos generales.

22.     **El 8 de febrero de 2023, la Sra. Berríos se reunió con la Sra. Fonseca y le presentó verbalmente una queja de acoso laboral contra la Sra. Odette Rivera.**

23.     **En dicha reunión, la Sra. Berríos le expresó a la Sra. Fonseca que estaba atravesando por una situación delicada y que era la primera vez en todos sus años profesionales que ella visitaba una oficina de Recursos Humanos.**

24.     **En la reunión al principio, la Sra. Fonseca indicó que la empleada, Sra. Berríos, estaba llorosa, nerviosa y ansiosa.**

25.     **La Sra. Berríos le indicó a la Sra. Fonseca que, desde hace tiempo estaba atravesando unos problemas en su oficina con la querellante, que esta tenía comportamientos que no eran normales, que había días que llegaba con malas actitudes y enojada, y que tiraba puertas.**

26.     **La Sra. Berríos le indicó a la Sra. Fonseca que le tenía que informar a la querellante las veces que salía de la oficina, que la querellante que le tomaba el tiempo para ir al baño y para ir a las áreas de**

trabajo y que le prohibía utilizar el celular a sabiendas de que tenía una situación con un familiar que se estaba debatiendo entre la vida y la muerte y aun cuando tal era su herramienta de trabajo en un momento en que el cuadro telefónico del Hospital no estaba funcionando y que se sentía totalmente afectada con esto.

27. En un momento dado en que el cuadro telefónico del Hospital estaba fuera de servicio, la querellante debía utilizar su celular para cumplir con sus funciones de trabajo tal como llamadas a pacientes.

28. La querellante le llamó la atención a la Sra. Rivera por cargar su celular en la toma de corriente del hospital a pesar de que ello no le afectaba.

29. La Sra. Berríos le indicó a la Sra. Fonseca que en ocasiones la querellante tenía reacciones extrañas como, por ejemplo, quitarle el espejo de la oficina porque decía que la Sra. Berríos se entretenía mirándose, peinándose y maquillándose frente al espejo.

30. La Sra. Berríos también le indicó a la Sra. Fonseca que la querellante le dijo que tuvo una revelación de que la Sra. Berríos era víctima de violencia doméstica.

31. En la reunión del 8 de febrero de 2023, la Sra. Fonseca le solicitó a la Sra. Berríos que pusiera por escrito su queja sobre las situaciones con la Sra. Rivera.

32. El 13 de febrero de 2023, la Sra. Berríos presentó al Departamento de Recursos Humanos del Hospital una queja escrita sobre conducta de la Sra. Rivera. La queja escrita no fue realizada en el formulario de Registro de Queja de Empleado que menciona el Manual de Empleados.

33. En su escrito del 13 de febrero de 2023, la Sra. Berríos indicó:

a. Mediante esta carta es mi interés informar una serie de acercamientos y acciones (actos) que he recibido de la Sra. Odette Rivera hacia mi persona desde aproximadamente el mes de noviembre de 2022.

b. La Sra. Rivera y esta servidora (Aimeé Berríos) compartimos espacio de oficina ubicada en el primer piso del Hospital desde inicio de las operaciones del Hospital San Lucas Metro.

c. El día 21 de noviembre de 2022 la Sra. Rivera me realizó un acercamiento preguntando "tengo una revelación que me dice que te pregunte si eres víctima de violencia de alguna agresión física por parte de tu pareja". Esta servidora respondió que no. Es importante señalar que ese día al cual hago referencia no se había dialogado temas de índole personal que pudiese haber llegado a realizar ese tipo de acercamiento.

d. La Sra. Rivera le instruyó al personal de planta física retirar el espejo ubicado en la parte superior del lavamanos. Le pregunté el motivo de retirar el espejo e indicó 'porque eso es una distracción para mí', a lo que respondí que 'si compartíamos espacio en la oficina por

*qué no me preguntó' y respondió en un tono hostil, 'yo a ti no te tengo que consultar todo lo que hago aquí'.*

**e.** *Solicito poder trabajar en un ambiente de paz, respeto a la intimidad y a la privacidad; sensibilidad. Continuar realizando mis intervenciones con los pacientes y/o residentes y que sean respetadas.*

**f.** *El 7 de febrero de 2023, luego de finalizar una reunión departamental, la querellante le comentó a la Sra. Berríos lo siguiente: "off the record, quería preguntarte, estás pasando por alguna situación de violencia de género porque te he notado distraída y como angustiada".*

**g.** *Ante el cuestionamiento, la Sra. Berríos procedió a contestarle a la querellante: "no es la primera vez que me haces ese acercamiento que no me hace sentir cómoda, no estoy pasando por esa situación y si ese fuese el caso no dudaría que contaría con la ayuda".*

**34.** ***Unos días antes del despido de la querellante, el empleado Caleb Ortiz, Supervisor de Enfermería, fue a la oficina de la Sra. Fonseca para manifestarle una preocupación por conducta que había presenciado de parte de la Sra. Rivera hacia la Sra. Berríos.***

**35.** *El Sr. Ortiz le indicó a la Sra. Fonseca que la querellante había ido a su área de trabajo buscando a la Sra. Berríos y que, a pesar de él indicarle que no la había visto, la querellante comenzó a entrar a los cuartos de los pacientes buscando a la Sra. Berríos y preguntándoles si habían visto a la Sra. Berríos.*

**36.** *La Sra. Fonseca le solicitó al Sr. Ortiz que enviara por escrito la queja informada.*

**37.** ***El Sr. Ortiz envió un correo electrónico el 17de febrero de 2023 a la Sra. Fonseca indicando:***
***El siguiente correo electrónico es para dejarles saber, que he observado una conducta inadecuada de la Sra. O. Rivera Supervisora de Trabajo Social, en la unidad de skilled nursing 2do piso ya que en una ocasión preguntó por la Sra. A. Berríos (TS) en el caunter (sic) de enfermería y se le notifica que al momento no se encontraba en la unidad mencionada y la Sra. Rivera comienza a entrar a las habitaciones de los residentes a ver si encontraba a la Sra. Berríos (TS). En otro día me encuentro en mi oficina del skill 2do piso y escucho a la Sra. O. Rivera Sup. TS refiriéndose a la Sra. Berríos (TS) que cómo le fue con los residentes, entiendo que no es el lugar adecuado para poder hablar situaciones de los residentes ya que en caunter (sic) de enfermería es totalmente abierto.***

**38.** *El 16 de febrero de 2023, la Sra. Fonseca entrevistó a la querellante en torno a las alegaciones de acoso laboral en su contra.*

**39.** *La Sra. Fonseca le dijo a la querellante que había una queja de la Sra. Berríos por ella sentirse perseguida por la querellante.*

**40.** *A la querellante se le brindó la oportunidad de dar su versión sobre las alegaciones presentadas por la Sra. Berríos.*

41. *La Sra. Fonseca le preguntó a la querellante si ella le había preguntado a la Sra. Berríos si la Sra. Berríos había tenido una revelación de Dios sobre que era víctima de violencia doméstica.*

42. *La Sra. Fonseca le hizo esa pregunta a la querellante porque esa fue una de las quejas presentadas por la Sra. Berríos en contra de la querellante.*

43. *La querellante mandó a quitar el espejo del lavamanos que utilizaba la Sra. Berríos y ésta porque el espejo era un distractor para la querellante.*

44. **Como explicación de por qué sacó el espejo del lavamanos del baño, la querellante le dijo a la Sra. Berríos que había decisiones que ella no tenía que consultarle a ella, y que son decisiones que ella (querellante) podía tomar.**

45. *La querellante indicó que era un distractor porque la Sra. Berríos llegaba al Hospital con el pelo suelto y cuando visitaba pacientes regresaba con trenzas.*

46. *En un momento en que a la Sra. Berríos le tomaron unas muestras de laboratorio, la querellante la comenzó a buscar por los cuartos de los pacientes del Hospital debido a que pasó aproximadamente una hora sin verla y se sintió preocupada.*

47. **Luego de haber entrevistado a la querellante, la Sra. Fonseca hizo un análisis de toda la información recopilada, culminó el proceso de investigación, consultó el caso con el área legal del Hospital y tomó la determinación de despedir a la querellante.**

48. **La determinación del despido la Sra. Fonseca se basó en la Política de Acoso Laboral del Hospital y en las disposiciones del Manual del Empleado.**

49. *La Sra. Fonseca le adjudicó credibilidad al testimonio de la Sra. Berríos y a los empleados que le notificaron quejas y preocupaciones sobre el comportamiento de la Sra. Rivera.*

50. **La querellante fue despedida el 17 de febrero de 2023 al concluirse mediante investigación interna que ésta incurrió en acciones de severidad e intensidad en contra de la Sra. Berríos que violentan las políticas y valores de la empresa.**

51. **Los criterios que la Sra. Fonseca tomó en consideración para el despido de la querellante fueron los resultados de la investigación, que incluyeron el estado de nervios en que estaba la Sra. Berríos por la conducta de la querellante de invadir su vida personal al constantemente preguntarle si era víctima de violencia de género; el grado de control que la querellante tenía sobre la Sra. Berríos, que en todo momento la monitoreaba cuando salía de la oficina, le tomaba el tiempo cuando iba al baño; tiraba herramientas de trabajo y las quejas de otro empleado sobre el comportamiento de la querellante.**

52. *La querellante no sabe quién tomó la determinación de despedirla.*

53. *La querellante no sabe los criterios que se tomaron en consideración para su despido.*

54. *La querellante es de la religión Pentecostal.*

> **55.**    *Al momento del despido de la querellante, la Sra. Fonseca no sabía qué religión practicaba la querellante.*
> **56.**    *Nadie en el Hospital le preguntó a la querellante cuál era su religión.*
> **57.**    *En el Hospital trabajan empleados que no son de la religión episcopal.*
> **58.**    *La Sra. Fonseca practica la religión Católica.*
> **59.**    *La querellante nunca presentó una queja de discrimen por religión.*
> **60.**    *La querellante no presentó una queja por represalias durante su empleo con el Hospital.*[24]

Basado en ello, determinó que no había controversia real sobre los hechos esenciales, por lo que dispuso del caso sumariamente. Referente a la reclamación por represalias el TPI expresó:

> *[L]a querellante alude a que dicha conversación con su supervisora constituye una actividad protegida por la Ley #115, supra. No obstante, no hay evidencia de que dicha conversación entre la Sra. Rivera y su supervisora haya sido como parte de una queja o querella instada por la querellante. Por el contrario, según la prueba presentada, la conversación fue iniciada por la Sra. Lucena para discutir una llamada telefónica realizada por la querellante y allí fue que, por primera vez, la querellante expresa su preocupación sobre asuntos de trabajo y el comportamiento de otros empleados. **Ante ello, concluimos que dicha conversación entre la querellante y su supervisora no constituye una actividad protegida por la Ley #115, supra.***
> *   **No obstante, aun asumiendo** únicamente para propósitos argumentativos **que dicha conversación** entre la querellante y su supervisora **haya sido una actividad protegida, no se estableció un nexo causal entre la actividad protegida y la acción disciplinaria adversa.** […].*[25]

Sobre la alegación de discrimen por razón religiosa, el foro primario indicó que:

> *La parte querellante **no presentó ninguna evidencia** que establezca **hechos concretos que reflejen** que el patrono **discriminó de alguna manera** en contra de **ella por razón de su religión. Tampoco** hay evidencia que **demuestre** que hubo **consideraciones religiosas** en la determinación de despedirla ni que la razón **para el despido** es que la querellante es cristiana.*[26]

Por lo que, el foro de instancia concluyó que HESL demostró que el despido de la apelante fue uno justificado. Por lo que, declaró

---

[24] Anejo 12 de la *Apelación*, a las págs. 313 – 320. *Énfasis nuestro.*
[25] *Id.*, a las págs. 329. *Énfasis nuestro.*
[26] *Id.*, a las págs. 330. *Énfasis nuestro.*

*Ha Lugar* la solicitud de sentencia sumaria y desestimó la reclamación instada por la apelante.

Inconforme, el **7 de diciembre de 2023** la señora Rivera Rivera presentó ante este Tribunal la apelación epígrafe, y señaló los siguientes errores:

> *1. Cometió error el Tribunal de Primera Instancia al desestimar la querella mediante sentencia sumaria concluyendo incorrectamente que no existe controversia real y sustancial sobre los hechos esenciales del caso. Esto, aun ante la existencia de controversias de hechos materiales y sustanciales, incumpliendo el Tribunal con el estándar de clara certeza que ameritaban un juicio en su fondo.*
>
> *2. Cometió error el Tribunal de Primera Instancia al incluir en su determinación de hechos múltiples hechos que sí están en controversia y que, requieren de la celebración de un juicio en su fondo para pasar juicio sobre los mismos.*
>
> *3. Cometió error el Tribunal de Primera Instancia al, desestimar la Querella en su totalidad, aun cuando existen razones de peso para entender que la parte Querellada incurrió en despido injustificado, represalias y discrimen en contra de la parte Querellante.*

Mediante el escrito intitulado *"Alegato de la parte apelada en oposición a la apelación"* compareció HESL el **3 de enero de 2023**. Con la comparecencia de ambas partes, procedemos a resolver el asunto.

-II-

-A-

La *Ley de Indemnización por Despido sin Justa Causa* (Ley Núm. 80),[27] fue creada con el propósito de proteger al empleado de actuaciones arbitrarias del patrono e imponer un remedio económico que desalentara la práctica de despedir empleados sin justa causa para ello.[28] Es por lo cual que el Art. 1 de la Ley Núm. 80, *supra*, establece que un empleado que: *(1) esté contratado sin tiempo determinado; (2) reciba una remuneración, y (3) sea despedido de su cargo sin que haya mediado justa causa, tiene derecho al pago*

---

[27] Ley Núm. 80 del 30 de mayo de 1976, según enmendada, conocida como la *Ley Sobre Despidos Injustificados*, 29 LPRA sec. 185a *et seq.*
[28] *Torres Álvarez v. Centro de Patología Avanzada*, 193 DPR 920, 929 (2015); *Romero v. Cabrera Roig*, 191 DPR 643, 649 – 650 (2014).

*de una indemnización por parte de su patrono, además del sueldo devengado, lo que se conoce comúnmente como la mesada.*[29]

Por otro lado, la Ley Núm. 80–1976, *supra* establece una presunción de que el despido fue injustificado, por lo cual recaerá sobre el patrono demostrar —por preponderancia de la prueba— que el despido fue justificado.[30] Sin embargo, esta presunción no opera de forma automática. Para activar dicha presunción, el trabajador debe demostrar los siguientes hechos básicos: *(1) que era un empleado de comercio, industria o cualquier otro negocio o sitio de empleo; (2) que trabajaba mediante remuneración alguna; (3) que fue contratado sin tiempo determinado, y (4) que fue despedido sin justa causa.*[31] De manera que —una vez el empleado pruebe los hechos básicos que sustentan una presunción de despido injustificado— logra invertir el peso de la prueba sobre el patrono demandado, quien solo puede derrotarla por prueba amplia y vigorosa.[32]

Si bien es cierto que la Ley Núm. 80-1976 no define con exactitud lo que constituye un despido justificado, el Art. 2 del mencionado estatuto establece una lista no taxativa de las circunstancias que constituyen *justa causa* para el despido de un empleado.[33] Las instancias que enumera el Art. 2 de la Ley Núm. 80, *supra*, incluyen causales tanto imputables al empleado,[34] como aquellas de índole empresarial que están relacionadas con aspectos económicos vinculados a la administración de una empresa.[35]

---

[29] *Torres Álvarez v. Centro de Patología Avanzada, supra*; *Orsini García v. Srio. de Hacienda*, 177 DPR 596, 620 – 621 (2009).

[30] *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 378 (2001).

[31] 29 LPRA sec. 185a.; *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 907 (2011).

[32] *Id.*, a la pág. 912.

[33] 29 LPRA sec. 185b.; *Lugo Montalvo v. Sol Meliá Vacation Club*, 194 DPR 209, 231 (2015).

[34] Tales como conducta inapropiada, que el trabajo se rinda de forma ineficiente, tardía, negligente o en violación a las normas del negocio, o que el empleado viole reiteradamente las reglas establecidas para el funcionamiento de la empresa. Véase, 29 LPRA sec. 185b.

[35] Tales como el cierre total, temporal o parcial de las operaciones de la empresa, cambios tecnológicos, reorganizaciones, reducción de empleados por reducción de ventas o ganancias. Véase, 29 LPRA sec. 185b.

**-B-**

Por otro lado, la *Ley de Represalias contra el Empleado por Ofrecer Testimonio*, Ley Núm. 115–1991, *supra,* es un estatuto reparador que prohíbe las represalias en el contexto laboral.[36] Esta ley protege a los empleados y crea una causa específica de acción sobre daños y perjuicios contra cualquier patrono que discrimine contra algún empleado por ofrecer o intentar ofrecer información o testimonio ante algún foro legislativo, judicial o administrativo.[37]

Cualquier persona que alegue una violación podrá presentar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado.[38]

A esos efectos, el Art. 2 de la Ley Núm. 115–1991, *supra,* establece que:

> *Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegio del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. […].[39]*

Dicho artículo en su inciso (c) establece el proceso probatorio aplicable para un tribunal dilucidar de la controversia.

> *El empleado deberá probar la violación mediante evidencia directa o circunstancial. El empleado podrá, además, establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por esta ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo. Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la*

---

[36] 29 LPRA sec. 194 *et. seq.*
[37] *Rivera Prudencio v. Mun. de San Juan,* 170 DPR 149, 159 (2007).
[38] 29 LPRA sec. 194a(b).
[39] 29 LPRA sec. 194a(a).

*razón alegada por el patrono era un mero pretexto para el despido.*[40]

Así pues, nuestro Tribunal Supremo recalcó que, para establecer un caso *prima facie* al amparo del referido estatuto, el empleado tendrá que probar mediante prueba directa o circunstancial: *(1) que participó en una de las actividades protegidas por la ley, y (2) que subsiguientemente fue despedido, amenazado o sufrió discrimen en el empleo.*[41]

La protección de la Ley Núm.115–1991, *supra* cubre al empleado con respecto a cualquier testimonio o información, en cualquier foro, bajo cualquier procedimiento.[42] Por su parte, el segundo requisito pretende que el empleado *haya sido despedido, amenazado o discriminado en el empleo subsiguiente a su incursión en la actividad protegida.*[43] De conformidad con lo anterior,

> *Luego de examinar el Art. 2 de la Ley Núm. 115, supra, que exige al empleado prueba de que fue despedido, amenazado o discriminado en el empleo subsiguiente a su incursión en la actividad protegida, encontramos que dicho estatuto parece disponer que la proximidad temporal resulta suficiente al momento de establecer un caso prima facie por represalias al amparo de nuestro ordenamiento legal. […]. Así el legislador pretendió que, al establecer un caso prima facie, el empleado no se enfrentara a un proceso probatorio oneroso, sino que bastara la comprobación de que la acción adversa que experimentó ocurrió al poco tiempo de haber incurrido en la alegada actividad protegida.*[44]

Por otro lado, en caso de no configurarse el despido dentro de un periodo de tiempo que pueda categorizarse como *"poco tiempo"* se deben analizar otros factores. Ante la falta de proximidad temporal, se requiere que el empleado demuestre la existencia de elementos adicionales que establezcan un nexo causal entre la actividad protegida y la acción adversa. Así, el empleado deberá demostrar que:

---

[40] 29 LPRA sec. 194a(c).
[41] *Feliciano Martes v. Sheraton*, 182 DPR 368, 393 – 394 (2011).
[42] La Ley Núm. 115 fue enmendada por la *Ley Núm. 169 del año 2014*, el 29 de septiembre de 2014, para ampliar la protección a los empleados contra represalias de su patrono por ofrecer cualquier testimonio o información en cualquier foro bajo cualquier procedimiento. *Id.,* en las págs. 394 – 395.
[43] *Feliciano Martes v. Sheraton, supra*, pág. 395.
[44] *Id.,* en las págs. 399 – 400.

*(1)* *que fue tratado de forma distinta a otros empleados;* *(2)* *que existió un patrón de conducta antagónica en su contra;* *(3)* *que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de incongruencias, o* *(4)* *cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. Lo anterior implica, necesariamente, un acercamiento caso a caso.*[45]

Cual reitera, el Tribunal Supremo ha destacado que es necesario que el empleado establezca que participó en una actividad protegida y luego fue despedido, lo cual establece una presunción *juris tantum.*[46] Por su parte, el patrono tiene la obligación de rebatir esta presunción justificando el despido. Revertido el peso de la prueba, el empleado podrá prevalecer en su reclamo si demuestra que la razón alegada por el patrono es un simple pretexto para el despido discriminatorio.[47]

**-C-**

En nuestro ordenamiento, el mecanismo de sentencia sumaria procura, ante todo, aligerar la tramitación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo.[48] A tal efecto, la Regla 36 de las de Procedimiento Civil dispone el proceso mediante el cual cualquiera de las partes puede solicitar al tribunal que dicte sentencia sumaria a su favor.[49] De esta forma, cuando cualquier parte le solicite al tribunal que el pleito sea resuelto por la vía sumaria, deberá demostrar en su solicitud, *"la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación".*[50]

Los hechos esenciales y pertinentes a los que se refieren las Reglas de Procedimiento Civil son los que se conocen como *"hechos*

---

[45] *Id.*, en la pág. 400.
[46] *Rivera Menéndez v. Action Service Corp.*, 185 DPR 431, 445 – 446 (2012).
[47] *Feliciano Martes v. Sheraton, supra*, a las págs. 393 – 394.
[48] *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018).
[49] Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 36.
[50] 32 LPRA Ap. V., R. 36.1 y 36.2.

*materiales".*[51] Al respecto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Además, la controversia sobre el hecho material tiene que ser real. Esto es, que una controversia no es siempre real o sustancial o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario.[52]

Ahora bien, la Regla 36.3 de Procedimiento Civil, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor.[53] A esos efectos, la mencionada regla establece que una solicitud al amparo de ésta deberá incluir: **(1)** una exposición breve de las alegaciones de las partes; **(2)** los asuntos litigiosos o en controversia; **(3)** la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; **(4)** una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; **(5)** las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable; y **(6)** el remedio que debe ser concedido.[54]

Presentada una solicitud de sentencia sumaria, la parte que se opone a la concesión de la misma también deberá cumplir con ciertos requisitos preceptuados en la referida regla y deberá argumentar el derecho aplicable a la controversia, ya sea para que

---

[51] *Id.*
[52] 32 LPRA Ap. V., R. 36.1.; *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010).
[53] 32 LPRA Ap. V, R. 36.3.
[54] *Id.*; *Pérez Vargas v. Office Depot / Office Max, Inc.,* 203 DPR 687, 698 (2019).

el pleito no sea resuelto por la vía sumaria, o para que se dicte sentencia sumaria a su favor.

Es decir, el hecho de que una parte solicite sentencia sumaria no implica que la misma debe ser resuelta a su favor. Esto es así porque la sentencia sumaria puede dictarse a favor o en contra del promovente, según proceda en derecho.[55]

El criterio rector al momento de considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales y pertinentes, según alegados por las partes en sus respectivas solicitudes y/o oposiciones, y que sólo reste aplicar el Derecho.[56]

Es por ello que, una moción de sentencia sumaria adecuadamente presentada solo puede negarse si la parte que se opone a ella presenta hechos fundamentados que puedan mover a un juez a resolver a su favor.[57] Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria.[58]

Quiere decir que, en ausencia de una controversia de hechos materiales discernible, corresponderá a los tribunales aplicar el Derecho y resolver conforme al mismo.[59]

En cambio, el TPI no deberá dictar sentencia sumaria cuando: **(1)** existen hechos materiales controvertidos; **(2)** hay alegaciones afirmativas en la demanda que no han sido refutadas; **(3)** surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; y **(4)** como cuestión de derecho no procede.[60]

---

[55] *Rodríguez García v. UCA*, *supra,* a la pág. 941.
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Rodríguez García v. UCA*, *supra.*
[60] *Vera v. Dr. Bravo*, 161 DPR 308, 333 – 334 (2004).

**-D-**

Nuestro Tribunal Supremo ha sido claro en que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de *pasión, prejuicio, parcialidad o error manifiesto.*[61] La citada norma de deferencia también es aplicable a las *decisiones discrecionales* de los tribunales de instancia. En cuanto a este particular, nuestro Alto Foro ha expresado lo siguiente:

> *No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.*[62]

Lo importante al momento de ejercer la función revisora es determinar cuándo un tribunal ha abusado de su discreción, ello, no constituye una tarea fácil.[63] Por lo tanto, para realizarla adecuadamente nuestro Alto Foro Judicial indica expresamente que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad.[64]

**-III-**

En síntesis, la *Sra. Odette S. Rivera Rivera* plantea en sus primeros dos (2) errores que el TPI incidió al declarar con lugar la solicitud de sentencia sumaria. Arguye que existen al menos veintinueve (29) hechos de los cuales existe controversia. Por lo cual, sostiene que el TPI no debió determinar, mediante el procedimiento sumario, que fue despedida bajo justa causa, y en consecuencia, desestimar la reclamación instada. No tiene razón. Veamos.

En **primer orden**, estamos en la misma posición que el TPI ante la solicitud de sentencia sumaria, por lo que procedemos a resolverla —no sin antes adoptar por referencia las sesenta (60)

---

[61] *Coop. Seguros Múltiples de PR v. Lugo,* 136 DPR 203, 208 (1994).
[62] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[63] *Id.*
[64] *Id.*

determinaciones de hechos incontrovertidos que esbozó el foro primario en la *Sentencia* apelada— por entender que están sustentados en la prueba que se acompañó en la solicitud.

En **segundo orden**, nos compete —como foro intermedio— determinar si las partes cumplieron con los requisitos que impone la referida Regla 36 de Procedimiento Civil. Un análisis de ambas solicitudes nos lleva a concluir que HESL cumplió con todos los trámites procesales correspondientes sobre la sentencia sumaria, en resumen, enumeró los hechos esenciales y pertinentes, sostuvo sus alegaciones al unir junto con ellas documentos admisibles en evidencia e indicó el remedio concedido. Por su parte, la oposición de la apelante no fue conforme a derecho, pues, aunque alegó que habían hechos en controversia, se limitó a argumentar mediante meras alegaciones.

En lo pertinente, el HESL instó una solicitud de sentencia sumaria en la que formuló una extensa lista de hechos materiales alegando que no están en controversia. En apoyo a los mismos, acompañó su solicitud con fragmentos de la deposición de la señora Rivera Rivera; declaración jurada de la señora Figueroa Virella; y otros documentos, de los cuales hizo una detallada y específica referencia. No obstante, aunque la señora Rivera Rivera presentó documentos admisibles en evidencia con el propósito de refutar los hechos formulados por HESL, no logró rebatirlo, ni presentó prueba que demostrara la existencia de hechos materiales y esenciales en controversia.

En **tercer orden**, la señora Rivera Rivera señala que el TPI incidió al desestimar la querella, pese a existir razones de peso para entender que el HESL incurrió en despido injustificado, represalias y discrimen por religión. Arguye que hay dos (2) hechos que

sustentan que su despido fue injustificado y en represalias.[65] Sin embargo, solo hizo alegaciones en el vacío, ya que no presentó prueba que justifiquen las mismas.

También, carece de méritos la alegación que hace la señora Rivera Rivera relacionada a que no se utilizaron los formularios correspondientes en la queja que la señora Berríos —subordinada de ésta— presentó en su contra por acoso laboral.[66] No obstante, luego de realizar la investigación correspondiente,[67] el patrono determinó que la apelante incurrió en dichas violaciones, por lo que procedió a despedirla conforme a la política de acoso laboral del Hospital y las disposiciones del Manual del Empleado.

En virtud de lo anterior —y ante la ausencia de prejuicio, pasión, parcialidad o error manifiesto— no intervendremos con la sentencia apelada, ni con la deferencia que a esos efectos se le debe al TPI.

**-IV-**

Por los fundamentos antes expuesto, **confirmamos** el *Sentencia* apelada.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[65] En síntesis, los dos hechos esbozados por la Apelante son: (1) la queja presentada contra HESL relacionada a las operaciones del patrono y la conducta inapropiada de algunos empleados y; (2) la aseveración de la apelante ante la decisión de mover la oficina del obispo al sótano *("sacar a Dios del Hospital.")*.
[66] Véase fragmento de la queja en la Determinación de Hecho #33.
[67] Además, surge del expediente que otros empleados presentaron quejas sobre la señora Rivera Rivera.